OPINION
{¶ 1} Defendant-appellant, Katherine Tomak aka Katherine Wright, appeals from a judgment of the Franklin County Court of Common Pleas finding her guilty of one count of burglary in violation of R.C. 2911.12. Although defendant originally assigned two errors, defendant subsequently withdrew her second assignment of error, leaving the first assignment of error for our consideration:
The trial court erred when it entered judgment against the defendant on the charge of burglary when the evidence was insufficient to sustain the conviction and the conviction was against the manifest weight of the evidence when the state failed to prove beyond a reasonable doubt that the defendant trespassed in an occupied structure.
Because sufficient evidence and the manifest weight of the evidence support the trial court's judgment, we affirm.
 {¶ 2} By indictment filed on June 24, 2003, defendant was charged with one count of burglary. Pursuant to a jury trial held on October 1 and 2, 2003, a jury found defendant guilty of burglary. The trial court sentenced defendant to three years, plus costs. In her single assignment of error, defendant asserts the judgment of the trial court finding her guilty of burglary is not supported by sufficient evidence or the manifest weight of the evidence.
 {¶ 3} To the extent defendant challenges her conviction as not supported by sufficient evidence, we construe the evidence in favor of the prosecution and determine whether such evidence permits any rational trier of fact to find the essential elements of the offense beyond a reasonable doubt. State v. Jenks
(1991), 61 Ohio St.3d 259, 260, paragraph two of the syllabus;State v. Conley (Dec. 16, 1993), Franklin App. No. 93AP-387.
 {¶ 4} When presented with a manifest weight argument, we engage in a limited weighing of the evidence to determine whether the jury's verdict is supported by sufficient competent, credible evidence to permit reasonable minds to find guilt beyond a reasonable doubt. State v. Thompkins (1997), 78 Ohio St.3d 380,387 ("When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony"); Conley, supra. Determinations of credibility and weight of the testimony remain within the province of the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 5} According to the state's evidence, Angelia Mayo lived with her boyfriend, Marlon Bick, at 897 Hodges Drive in Franklin County, Ohio. Bick owned a business installing sprinkler systems and running dump trucks, which he operated out of a garage approximately one mile from their home. Because defendant's boyfriend, Jack Robson, drove dump trucks for Bick, defendant occasionally came to the garage with Robson and had been to the Mayo/Bick home. As a result, Mayo and defendant were acquaintances.
 {¶ 6} On the morning of February 3, 2003, defendant pulled up to Bick's garage and asked for Mayo. When Bick advised that Mayo was at their house, defendant said she was going there and left. Still asleep because of her difficulties in sleeping at night, Mayo awoke about 11:00 a.m. because she heard the front storm door, a heavy door, slam shut. Mayo jumped up and looked out the window, where she saw defendant walking down the front porch. Defendant was carrying a black purse with a long strap; the purse had silver charms with "diamond things that made it sparkle." (Tr. 19.) Because of the charms, Mayo thought defendant was carrying Mayo's purse. Indeed, in the two years Mayo was acquainted with defendant, Mayo never knew defendant to carry a purse. Although the front door was not usually unlocked, that morning Bick was running late for work and forgot to lock the door.
 {¶ 7} Mayo ran to the front door, and as she did, she noticed her own purse was not where she usually kept it. The purse contained a credit card, some store cards such as a Kroger or Blockbuster card, family photos, and a $1 bill with some change. At the door, she tried to scream at defendant, but defendant was already in her car and driving down the street.
 {¶ 8} Meanwhile, defendant's departure from the garage that morning with the intention of calling on Mayo had prompted Bick to call home to so advise Mayo; no one answered the telephone. As a result, Bick told one of his fellow workers, Tony Redman, that he was going home and would be back quickly. As Bick approached the house, he passed defendant, who was on her way back from the house.
 {¶ 9} Bick entered the house and asked if defendant had been there. Mayo told him she thought defendant took her purse, but then wondered if perhaps Bick moved it. When Bick advised he did not move it and that it was in its usual spot when he left for work, Mayo again told Bick she thought defendant had stolen her purse. Bick left to chase defendant, and Mayo called the police, who arrived and took a report. Bick was unable to locate defendant. Neither Bick nor Mayo gave defendant permission to enter the house that morning.
 {¶ 10} Later in the morning on February 3, 2003, approximately 10 to 15 minutes after Bick said he was going home, Tony Redman heard the door leading to the office open. He saw a woman, whom he identified in the courtroom as defendant, look around the office, in the shop, and then back into the office. Redman again heard the door as it shut. According to Redman, the woman was inside for approximately 5 to 10 minutes. Once Bick returned, Redman advised him of the woman's presence.
 {¶ 11} On February 4, 2003, Gregory A. Feasel, a heavy-equipment operator who worked with Bick on several jobs in the past, walked into Bick's office and sat at a desk. Redman began talking to Feasel about the stolen purse from the prior day when Feasel saw a purse inside the office behind a computer screen. He left it there and gave it to Bick when Bick arrived. The purse Feasel discovered was Mayo's missing purse.
 {¶ 12} Defendant testified on her own behalf and stated she went to Bick's garage nearly every day to communicate with her live-in boyfriend, Jack Robson, because she had no telephone. On the morning of February 3, 2003, Robson went to Bick's garage to drive a dump truck. Defendant awoke between 9:30 and 10:00 a.m. and went to the garage to see if Robson was out with a truck or had been called off a job. When she did not see the truck, she asked Bick if Mayo was home and whether defendant could go there; Bick said yes.
 {¶ 13} When defendant arrived at Mayo's home, she knocked on the door, rang the door bell, opened the screen door, and knocked again, but she received no response. Accordingly, she left. She neither opened the inside door nor stepped inside the house. Instead, once in the car, she backed the car out and returned the same way she had driven to Mayo's home. In the course of doing so, she passed Bick; he waved and she waved. When defendant arrived back at the shop, she checked to see if Robson had called in or had pulled back into the garage; she saw Redman in the office. She looked to the right and left to see if Robson was there, and then left. According to defendant, she was there less than 30 seconds. About 2:00 p.m. that afternoon, she learned of the burglary accusation. Defendant called Bick from a pay phone. During the conversation, Bick accused defendant of the theft, she denied it, and Bick hung up. She never went back to the garage again because Bick told her she was not welcome.
 {¶ 14} Defendant was charged with violating R.C. 2911.12, which states:
(A) No person, by force, stealth, or deception, shall do any of the following:
(1) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense[.]
 {¶ 15} While defendant's brief challenges the sufficiency and weight of the evidence, defendant does not appear to contest any particular element of the offense of burglary, but rather challenges the weight and sufficiency of the evidence as a whole. Nonetheless, in the trial court, defendant argued in her Crim.R. 29 motion for acquittal that the state failed to prove the element of stealth, deception or force on the facts of this case. Contrary to defendant's contention, opening an unlocked door or entering through an open door satisfies that element of the burglary offense. See State v. Ward (1993), 85 Ohio App.3d 537;State v. Lane (1976), 50 Ohio App.2d 41, 46; State v.Hibbard, Butler App. No. CA2001-12-276, 2003-Ohio-707; State v.Bolden, Stark App. No. 2002-CA-00235, 2002-Ohio-6976; State v.McWilliams (Oct. 12, 2001), Greene App. No. 2000CA89.
 {¶ 16} Defendant's challenge to the sufficiency and weight of the evidence appears to rest on inconsistencies in the testimony of the witnesses. While defendant accurately notes discrepancies between the testimony of the state's witnesses and the testimony defendant offered, we construe the evidence in favor of the state in determining the sufficiency of the evidence. Here, Mayo's testimony supports the jury's verdict. She testified she heard the screen door slam, which caused her to jump out of bed and look out the window. She saw defendant walking off her porch. Defendant carried what Mayo believed was Mayo's own purse, and the only way defendant could have obtained the purse was by entering Mayo's home without consent. Bick stated he saw the purse in its usual spot when he left for work that morning. Mayo, however, checked and her purse was not there. The purse was discovered the next day at Bick's garage, where defendant had been seen shortly after she left Mayo's house. A one dollar bill Mayo recalled being in the purse was gone. The evidence, if believed, established defendant's illegal entry into Mayo's home and the resulting theft of Mayo's purse.
 {¶ 17} Defendant contends, however, that the manifest weight of the evidence fails to support her conviction. While our review of the manifest weight of the evidence involves a limited weighing of the evidence, inconsistencies in the testimony generally do not render the verdict against the manifest weight of the evidence. State v. Thompson (1998), 127 Ohio App.3d 511, discretionary appeal not allowed, 83 Ohio St.3d 1451 (stating that "[a] reviewing court must, therefore, accord due deference to the credibility determinations made by the fact-finder");State v. Craig (Mar. 23, 2000), Franklin App. No. 99AP-739, citing State v. Nivens (May 28, 1996), Franklin App. No. 95APA09-1236 (noting that "[w]hile the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence"). Indeed, the jurors need not believe all of a witness' testimony, but may accept only portions of it as true. State v. Burke, Franklin App. No. 02AP-1238, 2003-Ohio-2889, citing State v. Caldwell
(1992), 79 Ohio App.3d 667.
 {¶ 18} Applying those principles here, we cannot conclude the testimony as a whole, however divergent, renders the state's testimony so beyond belief that a reasonable juror could not accept it as true, despite defendant's assertions regarding the credibility of the various witnesses and the facts they set forth for the jury. For example, defendant contends Mayo possibly, if not likely, simply left her purse at Bick's office. Other evidence, however, undermines that contention. Specifically, Bick testified the purse was at their home when he left for work that morning. Moreover, defendant's evidence does not explain the missing dollar bill. Similarly, defendant's version of the facts does not explain why the purse was placed in the garage behind the computer screen, where it would not be immediately noticed.
 {¶ 19} In the final analysis, the resolution of defendant's charges became a matter of credibility for the jury to assess. We cannot conclude the jury lost its way in finding the state's evidence more persuasive than defendant's evidence. Accordingly, we overrule defendant's single assignment of error and affirm the judgment of the trial court.
Judgment affirmed.
Lazarus, P.J., and Petree, J., concur.