OPINION
{¶ 1} Defendant-appellant, Trido Rogers, appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty of assault. Defendant assigns a single error:
The jury verdict was not supported by sufficient credible evidence and was against the manifest weight of the evidence. As a result, appellant was denied due process protections under the state and federal Constitutions.
Because sufficient evidence and the manifest weight of the evidence support the jury's verdict, we affirm.
 {¶ 2} On September 24, 2003, defendant was indicted for murder and felonious assault arising out of the death of Derrick Floyd. On July 14, 2004, a jury trial commenced in which defendant was tried jointly with co-defendants Roshawn Howard and Jeffrey Jones. The jury found defendant not guilty of either murder or felonious assault, but guilty of assault, and the trial court sentenced defendant accordingly. In his single assignment of error, defendant contends the sufficiency and manifest weight of the evidence do not support his assault conviction.
 {¶ 3} According to the state's evidence, on August 29, 2003, Kenneth Eaton, nicknamed Snoop, was visiting his friend, co-defendant Roshawn Howard, at the Old Nantucket apartment complex located at 1980 Belcher Drive. Co-defendant Jeffrey Jones, defendant, Jerome Barksdale and Isa Manning were also present that day. Amonda Logan, the state's main witness, lived down the hall from Howard in the same apartment building. Although Logan knew Howard and Jones and spent time with them about twice a week, she did not know defendant until the night in question. Defendant is Howard's stepfather.
 {¶ 4} Not having to work on August 29, Logan drank approximately two beers in her apartment before going outside around 6:00 or 7:00 p.m. Logan went to a back porch area, the typical gathering spot, and encountered defendant and his friends. Logan talked with them and drank another beer. According to Logan, approximately 20-30 minutes after she arrived outside, she, defendant and Howard decided to drive to the store to purchase more beer. As they exited the apartment complex, Howard and defendant noticed Derrick Floyd sitting under a tree. Defendant and Howard indicated Floyd had done something to them and stated they should "kick his ass." (Tr. Vol. I, 170.) Upon their return from the store, Logan went toward the apartment building; defendant and Howard approached Floyd.
 {¶ 5} According to Logan, defendant and Howard began punching Floyd, who remained sitting. Floyd attempted to block the punches by holding his arms up in front of his face, but defendant and Howard repeatedly hit Floyd in the head and upper body. Logan and Snoop watched the fight from the corner of the apartment building; Snoop urged Logan to go inside. A few minutes later, a car stopped; Jones exited and joined defendant and Howard in the assault. Another car, a passerby, stopped to see what was occurring, but the driver was told to leave because the fight was none of his business. Logan testified the fight continued for several minutes.
 {¶ 6} After the incident, defendant, Jones, and Howard used defendant's vehicle to go to a bar called Dirty Dungarees. Logan and Snoop, driving separately, followed them to the bar. Logan testified that she and Snoop remained in the car and talked until Snoop took her home. On arriving at the apartment building, they entered at the opposite side of the building from where the assault took place; she did not see Floyd or any police units at that time.
 {¶ 7} When the police found Floyd that evening, he was unconscious and appeared to have suffered significant injury to his head. Floyd was transported to the hospital where unsuccessful attempts were made to save his life; Floyd died several days later from a subdural hemotoma.
 {¶ 8} On August 30, 2003, homicide detective Brian Carney received an anonymous phone call. The caller, later determined to be Logan, gave Carney an account of the assault on Floyd. The caller identified defendant, Howard, and Jones as the individuals involved.
 {¶ 9} Dr. Patrick Fardal, also a witness for the state, testified Floyd died as a result of blunt impacts to his head, as well as injury to the brain itself from a traumatic event. Dr. Fardal noted abrasions on Floyd's hands, sutures on his face, and bruises on both of his biceps. Dr. Fardal also pointed out that the hospital report showed Floyd had a.29 blood alcohol level, a level sufficiently elevated to cause slowed reflexes and impaired judgment. On cross-examination, Dr. Fardal noted that the subdural hemotoma could have been caused by blunt impact to the head after falling and hitting concrete.
 {¶ 10} Snoop also testified for the state, but his testimony differed substantially from Logan's testimony. According to Snoop, he went to Howard's apartment on August 29 and was drinking and socializing in the hallway. At some point, Snoop and Howard went outside and noticed Floyd walking. Howard commented to Snoop that Floyd had "stolen a car or something," and Howard wanted to talk to Floyd about it. (Tr. Vol. I, 32.) Snoop told Howard to leave the issue alone; they went inside the building.
 {¶ 11} Sometime later, Snoop went outside and observed a group of approximately 15-20 people around the corner of the building near Floyd, who was under a tree. Snoop testified Floyd was trying to get up on his feet, as if he had been in a fight. Although Snoop saw Howard and Jones "huffing and puffing" in the crowd, he testified he did not see defendant during that time. (Tr. Vol. I, 29-30.) Similarly, Snoop indicated he saw individuals beating up on Floyd, but denied it was defendant, Howard or Jones. Snoop, however, acknowledged he lost track of Howard and Jones for a period of time that day.
 {¶ 12} After the incident, he drove to a bar with Logan. Snoop testified that he and Logan went inside the bar, had some drinks, and shot pool; he then took her home. Upon arriving back at the apartment complex, Snoop stated he saw police units and an ambulance near the place the fight had occurred.
 {¶ 13} Defendant argues in his single assignment of error that the evidence is insufficient to sustain the jury verdict and the verdict is against the manifest weight of the evidence. Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v.Thompkins (1997), 78 Ohio St.3d 380, 386. Sufficiency is a test of adequacy. Id. We construe the evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus; State v. Conley (Dec. 16, 1993), Franklin App. No. 93AP-387.
 {¶ 14} When presented with a manifest weight argument, we engage in a limited weighing of the evidence to determine whether the jury's verdict is supported by sufficient competent, credible evidence to permit reasonable minds to find guilt beyond a reasonable doubt. Conley, supra;Thompkins, at 387 ("When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the fact finder's resolution of the conflicting testimony"). Determinations of credibility and weight of the testimony remain within the province of the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. Reversals of convictions as being against the weight of the evidence are reserved for cases where the evidence weighs heavily in favor of defendant. State v.Otten (1986), 33 Ohio App.3d 339, 340.
 {¶ 15} Based on the conflicting testimony between Snoop and Logan, defendant contends the state did not prove beyond a reasonable doubt his identity as one of the assailants. See State v. Marcum, Columbiana App. No. 03CO36, 2004-Ohio-3036, ¶ 22 (noting that "[b]esides proof of the statutory elements of [the offense], the state must also accomplish the identification of [defendant] as the perpetrator beyond a reasonable doubt"). Defendant contends the numerous inconsistencies in their testimony clearly demonstrate that defendant was not involved in the assault on Floyd. Reduced to its essence, defendant's assignment of error claims the jury could not believe Logan.
 {¶ 16} Defendant correctly points out a number of inconsistencies between the testimony Logan and Snoop each offered. Initially, Logan testified that as she, defendant and Howard were in the car on the way to the store, defendant and Howard stated they should "kick [Floyd's] ass." Snoop, by contrast, testified they observed Floyd walk by, and Howard simply told him that Floyd had stolen a car and Howard wanted to talk to him about it. Next, Snoop testified he did not see defendant outside during the assault, and neither defendant, Howard, nor Jones struck Floyd. Logan, however, identified defendant, Howard, and Jones as the assailants that repeatedly struck Floyd. Defendant further notes that although Snoop testified he and Logan, after the fight, went to a bar, drank a few beers, and shot pool, Logan denied that she and Snoop went inside the bar. Rather, she testified they sat in the car and talked. Finally, Snoop testified that when he drove Logan home, he saw police cars and an ambulance near the area where he saw the fight; Logan testified she and Snoop entered at the opposite side of the building, and she did not see the police or Floyd.
 {¶ 17} In addition, defendant pointed out inconsistencies between the trial testimony of Logan as compared to Detective Carney's written police report, taken from Logan's account of events. Specifically, the report stated Logan, defendant, and Howard walked to the store; Logan testified they drove to the store. The report states Logan saw defendant kick Floyd repeatedly; Logan testified she did not see anyone kick Floyd.
 {¶ 18} In the report Logan also apparently erred in describing defendant's age and height, and at trial she denied describing Howard to the police as six feet tall, even though the report sets forth that information. When questioned at trial, Logan explained that the detective innocently may have mixed up the names. Defendant, instead, offers that Logan's alcohol consumption, coupled with the fact she did not know defendant prior to that night, led to not only that inconsistency, but all the noted inconsistencies.
 {¶ 19} The existence of conflicting evidence does not render the evidence insufficient as a matter of law. State v. Butts, Franklin App. No. 03AP-495, 2004-Ohio-1136, citing State v. Murphy (2001),91 Ohio St.3d 516. Construing Logan's testimony alone in favor of the prosecution, a rational trier of fact could find that defendant was one of the assailants and that the state proved the essential elements of assault beyond a reasonable doubt. State v. Kendall (June 29, 2001), Franklin App. No. 00AP-1098 (rejecting insufficiency of the evidence argument); Butts, supra; State v. McVay (Sept. 30, 1999), Franklin App. No. 98AP-1246. Thus, the state presented sufficient evidence for reasonable minds to find defendant guilty of assault.
 {¶ 20} Defendant, however, also contends the number and significance of the inconsistencies renders the verdict against the manifest weight of the evidence. A conviction is not against the manifest weight of the evidence solely because the jury heard inconsistent testimony. Butts;Kendall, supra. Indeed, credibility issues remain within the province of the trier of fact. Id.; McVay, supra (noting that "[c]redibility determinations on conflicting testimony are issues primarily reserved to the trier-of-fact to be second-guessed only in the most exceptional case"). The jury here was well aware of the inconsistencies in Logan's testimony as a result of cross-examination.
 {¶ 21} The jury, however, had a reasonable basis to reject Snoop's testimony and find Logan's more persuasive. Snoop was a friend of Howard and knew defendant and Jones; defendant was Howard's stepfather. From that evidence, the jury could conclude Snoop had a bias that was reflected in his testimony. By contrast, the record discloses no apparent motive for Logan to lie. Although Logan drank a few beers that night, no evidence, but only defense counsel's statements, suggests her consumption of alcohol significantly impaired her memory. In the end, the significant difference between the testimony of Snoop and Logan was that Snoop implicated none of the defendants; Logan implicated all three. The jury weighed the testimony and chose to believe Logan.
 {¶ 22} Indeed, the jury necessarily considered and weighed the testimony, as it found in favor of defendant on the charges of murder and felonious assault and convicted defendant only of assault. Moreover, the jury's decision to believe significant parts of Logan's testimony is supported in the testimony of Dr. Fardal, whose testimony regarding the nature of the injuries, along with excerpts of Snoop's testimony, corroborated Logan's testimony. Logan's testimony thus is not beyond being believed, and the jury properly could believe all or part of both Logan's and Snoop's testimony. Because that evidence, as well as the remainder of the evidence, does not weigh heavily in favor of defendant, the verdict is not against the manifest weight of the evidence. Accordingly, defendant's single assignment of error is overruled.
 {¶ 23} Having overruled defendant's single assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas
Judgment affirmed.
Klatt and Bowman, JJ., concur.
BOWMAN, J., retired, of the Tenth District Court of Appeals, sitting by assignment pursuant to Section 6(C), Article IV, Ohio Constitution.