OPINION
{¶ 1} Defendant-appellant, Johnny T. Hairston ("appellant"), appeals his conviction, in the Franklin County Court of Common Pleas, on one count of assault on a peace officer, a violation of R.C. 2903.13 and a felony of the fourth degree.
 {¶ 2} This case began on December 5, 2005, when the Franklin County Grand Jury indicted appellant on one count of assault on a peace officer. On October 30, 2006, following a jury trial, appellant was found guilty as charged. On January 17, 2007, the trial court sentenced appellant to a term of community control. Appellant timely appealed and advances three assignments of error for our review, as follows:
 First Assignment of Error: The evidence was legally insufficient to support appellant's conviction for assault on a police officer.
 Second Assignment of Error: The court erroneously overruled appellant's motion for acquittal pursuant to Criminal Rule 29.
 Third Assignment of Error: Appellant's conviction was against the manifest weight of the evidence.
 {¶ 3} Appellant's first and second assignments of error challenge the sufficiency of the evidence, and his third assignment of error challenges the verdict as against the manifest weight of the evidence. Though sufficiency and manifest weight summon us to apply two different standards of review, we will discuss all three assignments of error together because they both call for a detailed review of the evidence and because appellant's arguments in support of each assignment are based upon the same premise.
 {¶ 4} The Supreme Court of Ohio outlined the role of an appellate court presented with a sufficiency of evidence argument in State v.Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus: *Page 3 
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
See, also, Jackson v. Virginia (1979), 443 U.S. 307, 319, 99 S.Ct. 2781,61 L.Ed.2d 560.
 {¶ 5} This test raises a question of law and does not allow the court to weigh the evidence. State v. Martin (1983), 20 Ohio App.3d 172, 175,20 OBR 215, 485 N.E.2d 717. Rather, the sufficiency of evidence test "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."Jackson, supra, at 319. Accordingly, the weight given to the evidence and the credibility of witnesses are issues primarily for the trier of fact. State v. Thomas (1982), 70 Ohio St.2d 79, 80, 24 O.O.3d 150,434 N.E.2d 1356. The reviewing court does not substitute its judgment for that of the factfinder. Jenks, supra, at 279.
 {¶ 6} In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a "thirteenth juror." Under this standard of review, the appellate court weighs the evidence in order to determine whether the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins (1997),78 Ohio St.3d 380, 387, 678 N.E.2d 541.
 {¶ 7} The appellate court, however, must bear in mind the trier of fact's superior, first-hand perspective in judging the demeanor and credibility of witnesses. See State v. *Page 4 DeHass (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus. The power to reverse on "manifest weight" grounds should only be used in exceptional circumstances, when "the evidence weighs heavily against the conviction." Thompkins, supra, at 387.
 {¶ 8} Appellant was convicted of assault on a peace officer. The crime of assault on a peace officer is codified at R.C. 2903.13, which provides, in pertinent part:
 (A) No person shall knowingly cause or attempt to cause physical harm to another * * *
 * * *
 (C) * * * Except as otherwise provided in division (C) (1), (2), (3), (4), or (5) of this section, assault is a misdemeanor of the first degree.
 * * *
 (3) If the victim of the offense is a peace officer * * * while in the performance of their official duties, assault is a felony of the fourth degree.
"Peace officer" means, inter alia, a "member of the organized police department of any municipal corporation," R.C. 2935.01(B). See, also, R.C. 2903.13(D)(1).
 {¶ 9} With all of the foregoing in mind, we examine the evidence presented by plaintiff-appellee, State of Ohio ("appellee"). Columbus Police Officer Kevin Winchell was the first to testify. Officer Winchell testified that he was working the second shift as a patrol officer on the evening of November 22, 2005. At approximately 8:00 p.m. he was dispatched to a residence located at the corner of East Whittier and Wager in the city of Columbus, pursuant to a report that two suspicious people were at the rear of the residence. Officer Winchell pulled up to the corner of Wager and the alley behind the *Page 5 
home, and observed appellant standing outside of a work van at the rear of the residence. The officer stated that appellant was wearing coveralls and holding a beer in his hand. The officer testified that he thought appellant might have been doing maintenance work in the area.
 {¶ 10} He stopped his cruiser in the alley, rolled down his window, and asked to speak with appellant. According to the officer, appellant responded with aggressive language and cursing. The officer asked whether appellant lived at the residence, but appellant did not answer. The officer then asked appellant to put down his beer, and appellant responded that he would not do so. According to Officer Winchell, there was no fence or garage separating him from appellant, and appellant was standing between the officer and the van, approximately 25 feet from the officer.
 {¶ 11} At that point, the officer exited his cruiser and began to approach appellant in order to identify him and determine whether he was lawfully on the property. According to the officer, appellant "approached me in an aggressive manner, came within almost bodily contact of me. * * * Because he had come so close to me, I felt personal danger to myself. I pushed him away and told him to get back."[1] The officer testified that as he was pushing appellant away, appellant punched him in the right side of the face. At the time, the officer was carrying his standard firearm and a taser, but had not drawn either weapon.
 {¶ 12} The officer attempted a separating maneuver called a front kick, but it had no effect, and appellant grabbed the officer's jacket. Then, Officer Winchell testified, he *Page 6 
and appellant "were wrestling around"[2] and appellant threw "at least two or three more punches at me. I was able to punch back in self-defense."[3] Eventually, the officer was able to force appellant to the ground and place him in handcuffs, and then called for backup. Two witnesses ran up to Officer Winchell to ask whether he was alright. Officer Winchell authenticated several photographs taken of him shortly after the incident. The photographs depict mud and dirt marks on the officer's clothing, an offensive wound on the officer's right index finger, and a cut on the inside of his lower lip. The officer testified that he sustained both injuries during the scuffle with appellant, but did not require medical treatment.
 {¶ 13} Roger Carrel testified next. His home is located on the corner of Reinhard and Wager, and backs to the same alley where the altercation took place. In fact, Carrel's home is directly behind the home at which Officer Winchell found appellant. Carrel's home has a two-car garage but, he said, nothing obstructed his view of the home directly behind his own. Carrel told the jury that the house behind his is a duplex and that a chain-link fence runs from the middle of the back of the house and "goes halfway out,"[4] separating the two rental units. He stated that another chain-link fence is located on the border of the property along Wager. There is a cement parking pad adjacent to the alley, where, Carrel said, there might have been a garage at one time. Carrel participates in a neighborhood "block watch" program formed in response to theft and prostitution in the area. *Page 7 
 {¶ 14} Carrel testified that on the evening of November 22, 2005, he received a telephone call from a neighbor by the name of "Gloria" in which Gloria reported to Carrel that she had seen in the alley a suspicious person and a white van unknown to the area. From his upstairs bedroom window Carrel had a clear view of the van and the back of the residence behind his. When Carrel looked out his window he saw an individual inside the house "opening cabinets and looking suspicious."[5] Thereafter, he and his roommate, Ken Williams ("Williams"), went outside and peered into the windows of the van, and saw plumbing supplies and tools inside. They then went back inside and called police.
 {¶ 15} Carrel testified that he saw Officer Winchell pull up and that, "as [the officer] got out [of his cruiser], [appellant] sucker-punched him and started wailing on him."[6] Carrel stated that he did not see the officer swing or strike at appellant. According to Carrel, the officer "didn't have a chance to do anything."[7] "As [the officer] raised up, [appellant] started hitting him."[8] Carrel stated that it was a long distance between the cruiser and the place where appellant was standing prior to the altercation. Carrel called 9-1-1 again to inform authorities that Officer Carrel was in trouble, then went outside with a shovel to assist the officer. By the time Carrel arrived at the back of the house, however, Officer Carrel had subdued appellant.
 {¶ 16} Columbus Police Detective David Harrington testified that he works in the assault squad and responded to the altercation between appellant and Officer Winchell. *Page 8 
He interviewed appellant after appellant was arrested, and appellant told the detective that he had consumed three 24-ounce beers earlier in the day.
 {¶ 17} Williams, Carrel's roommate, testified about the call from "Gloria" and about going outside with Carrel and seeing plumbing supplies and tools in the van parked behind his home. This concerned him, he said, because some of the houses in the area had been burglarized by thieves stealing copper plumbing pipes. According to both Carrel and Williams, they believed that the duplex behind their home had no tenants at that time, which added to their suspicion at seeing someone inside the home. After he called police, Williams continued to look out from his back upstairs window, and observed an individual opening up cabinets, then saw the individual-appellant-exit the home and stand beside the van. Williams stated that appellant was holding something in his hand.
 {¶ 18} Williams witnessed Officer Winchell pull up and park his cruiser partly on the alley and partly on the property behind Williams' home, "straddling the corner[.]"[9] According to Williams, there was no more than five feet between the officer's cruiser and the parked van. Williams then testified:
 After the officer pulled up, he got out of the car. The gentleman was standing outside the van; and in a matter of maybe two minutes or so, the gentleman started assaulting the police officer.
 * * *
 [I]t looked like the police officer just got out and said — I don't know, probably asked what he was doing there. After that, the gentleman just started with no — he just started beating on the police officer.
 * * * *Page 9 
 Definitely, the defendant threw the first punch.
(Tr., 97-98.)
 {¶ 19} Williams testified that he and Carrel then ran downstairs with a shovel to assist the officer, whereupon they found that the officer had subdued appellant. Williams testified that the duplex has a chain-link fence. When asked on cross-examination whether the fence completely encloses the back yard, Williams testified, "It's so small that it encloses the small backyard, and then you have a patch of grass, and then you have the alley."[10] He also stated that there is a patch of cement behind the house for parking.
 {¶ 20} In support of all three of his assignments of error, appellant argues that factual differences in the testimony of appellee's witnesses warrant reversal of appellant's conviction on sufficiency and manifest weight grounds. Specifically, appellant points out that the witnesses gave varying accounts as to the distance between Officer Winchell's cruiser and appellant and his van, as to whether there was a fence between the cruiser and appellant, and as to how long the two men interacted before appellant first touched the officer. "Conflicting evidence and inconsistencies in the testimony, however, generally do not render the verdict against the manifest weight of the evidence."State v. McDaniel, Franklin App. No. 06AP-44, 2006-Ohio-5298, ¶ 16, citing State v. Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, ¶ 21.
 {¶ 21} "While the jury may take note of the inconsistencies and resolve or discount them accordingly, such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." (Citation omitted.) State v. Nivens *Page 10 
(May 28, 1996), Franklin App. No. 95APA09-1236, 1996 Ohio App. LEXIS 2245, at *7; see, also, State v. Tomak, Franklin App. No. 03AP-1188,2004-Ohio-6441, ¶ 17 (inconsistencies in witness' testimony generally do not render a verdict against the manifest weight of the evidence);State v. Rogers, Franklin App. No. 04AP-705, 2005-Ohio-2202, ¶ 19, discretionary appeal not allowed, 106 Ohio St.3d 1506, 2005-Ohio-4605,833 N.E.2d 1249 (the existence of conflicting evidence does not render the evidence insufficient as a matter of law).
 {¶ 22} The trier of fact is in the best position to take into account conflicting evidence and inconsistencies, along with the witness' manner and demeanor, and to determine whether the witness' testimony is credible. State v. Williams, Franklin App. No. 02AP-35, 2002-Ohio-4503, ¶ 58;State v. Clarke (Sept. 25, 2001), Franklin App. No. 01AP-194. Thus, jurors need not believe all of a witness' testimony, but may accept only portions of it as true. Raver, supra, at ¶ 21; State v.Burke, Franklin App. No. 02AP-1238, 2003-Ohio-2889, citing State v.Caldwell (1992), 79 Ohio App.3d 667, 607 N.E.2d 1096. "The fact finder can hear and see as well as observe the body language, evaluate voice inflections, observe hand gestures, perceive the interplay between the witness and the examiner, and watch the witness's reaction to exhibits and the like. Determining credibility from a sterile transcript is a [H]erculean endeavor. A reviewing court must, therefore, accord due deference to the credibility determinations made by the fact finder."State v. Thompson (1998), 127 Ohio App.3d 511, 529, 713 N.E.2d 456, discretionary appeal not allowed, 83 Ohio St.3d 1451, 700 N.E.2d 334.
 {¶ 23} Upon review of all of appellee's evidence, and according due deference to the jury's resolution of factual inconsistencies in the testimony, we conclude that a rational *Page 11 
jury could have reasonably concluded that appellant knowingly caused and/or attempted to cause physical harm to Officer Winchell. Accordingly, the verdict was not based upon insufficient evidence and was not against the manifest weight of the evidence. For this reason, we overrule all three of appellant's assignments of error and affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
TYACK and WHITESIDE, JJ., concur.
WHITESIDE, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
[1] Tr., 30.
[2] Tr., 35.
[3] Id.
[4] Tr., 74.
[5] Tr., 60.
[6] Tr., 62.
[7] Tr., 63.
[8] Tr., 64.
[9] Tr., 109.
[10] Tr., 108. *Page 1