[Cite as *State v. Kuhl*, 2014-Ohio-2178.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 100124

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## MICHAEL KUHL

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-12-566758-A

**BEFORE:**  Kilbane, J., Keough, P.J., and Blackmon, J.

**RELEASED AND JOURNALIZED:**  May 22, 2014

**ATTORNEYS FOR APPELLANT**

Robert L. Tobik
Chief Public Defender
Jeffrey Gamso
Cuyahoga County Public Defender
310 Lakeside Avenue - Suite 200
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
Stephanie Anderson
Mary Weston
Assistant County Prosecutors
The Justice Center - 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

MARY EILEEN KILBANE, J.:

{¶1}  Defendant-appellant, Michael Kuhl ("Kuhl"), appeals from his conviction for felonious assault with notice of prior conviction and repeat offender specifications. Having reviewed the record and pertinent law, we affirm the trial court's decision.

{¶2}  On September 25, 2012, Kuhl was indicted in connection with a fight outside of Mandy's Lounge ("Mandy's") on Pearl Road in Cleveland, in the early morning hours of  June 18, 2012.  The indictment charged him with felonious assault upon Ivan Velez ("Velez") and also set forth a notice of prior conviction and a repeat violent offender specification.  He pled not guilty.  Kuhl elected to have the prior specifications tried to the court and the felonious assault charge tried to a jury.  The matter proceeded to trial on May 7, 2013.

{¶3}  The state's evidence demonstrated that at around 6:30 p.m., on the night of June 17, 2012, Father's Day, Donnie Evans ("Evans") and Velez went to Mandy's to have a beer and play pool.  Evans's nephew Irvin Maldonado ("Maldonado")  joined them. According to Evans, each one had two beers.   Later that night, at around midnight, Evans heard a group of men arguing with a man named Jose about a game of pool, so he and Velez decided to leave.  According to Evans, as they got outside, Velez turned around, and a man with "dirty-blond hair and facial hair," later identified in court as Kuhl, struck him in the head.   Velez collapsed immediately.   Kuhl then ran to the parking lot and fled in a red and white pickup truck.   Evans identified Kuhl in court.

{¶4} Evans further testified that Velez was unconscious and was taken by ambulance to MetroHealth Hospital. He had sustained a skull fracture, black eye and a damaged eardrum. About a month later, a detective showed Evans a black and white photo array. Evans identified another individual and indicated that he was only 50 percent certain of his identification. On September 18, 2012, Evans was shown a second photo array containing color photographs. Evans identified Kuhl as the man who struck Velez and stated that he was "70 percent" certain of his identification.

{¶5} Maldonado testified that he had been at Mandy's with Velez and Evans. He noticed a commotion and went outside. He observed two men circling Velez. According to Maldonado, one of the men had "dirty-blond hair" and a "bulldog face," and the other man had dark, shoulder-length hair. Maldonado testified that it appeared that Velez had been hit and was dazed. The man with the dirty-blond hair punched Velez, knocking him down, and the other man then slapped him. The men ran to the parking lot and fled in a truck. Maldonado followed and noted the license plate number of the truck. Maldonado provided the license plate number to the police the following day.

{¶6} On August 11, 2012, Detective John Kubas ("Detective Kubas") showed Maldonado a black and white photo array, and he identified Kuhl with 80 percent certainty. Maldonado further testified that, after seeing a color photograph and viewing Kuhl in court, he is 100 percent certain of the identification.

{¶7} Velez testified that he was at the bar with Evans. Later in the evening, he, Evans, and the bartender, Tara Bishop ("Bishop"), exited the bar to smoke. As he left

the bar, he was struck on the left side of his head. He testified that he did not see who struck him and, although Detective Kubas showed him two different photo arrays, he could not identify a suspect. Velez sustained a fractured skull, blurry vision, and hearing loss.

{¶8} Bishop testified that Velez, Evans, and Maldonado were at the bar playing pool. An individual known as "Chico" or "Jose" was also there, and Kuhl's group arrived later. At around 11:15 p.m., Bishop went outside to have a cigarette, and the rest of the bar patrons eventually followed suit. According to Bishop, "Chico" was in a bad mood and was "running his mouth." He started an argument with Kuhl's group that turned into a physical confrontation. Bishop stepped in to break up the fight, and someone threw her into a flower bed in the front of the bar. As she stood up, she observed Velez unconscious and lying in the street, and two men were running away toward the parking lot. On September 20, 2012, Bishop was shown a color photo array and identified Kuhl with "100 percent" certainty.

{¶9} Cleveland Police Officer Joseph Gulas ("Officer Gulas") testified that he was dispatched to Mandy's in response to a report of a fight. EMS personnel were attending to Velez when Officer Gulas arrived. Witnesses reported that Velez had been assaulted by a white male with a goatee, who was wearing a baseball cap, and fled the scene in a black pickup truck. He learned from the bar owner, John Siakantiras, that a video camera recorded activities in the parking lot. Officer Gulas then went to

MetroHealth Hospital to speak with Velez, but he was being treated and was unable to speak with the officer.

{¶10} Detective Kubas testified that he performed the follow-up investigation. He viewed security video from the parking lot and observed two males running into the parking lot. A third man then went to the lot and left in a light colored pickup truck. Detective Kubas learned that Evans and Maldonado witnessed the assault, and Maldonado provided the detective with a license plate for a dark truck that left the scene. Detective Kubas learned that this vehicle is registered to Kuhl. A few weeks later, on July 13, 2012, Detective Kubas prepared a photo array for Evans,[1] but Evans identified a different individual with 50 percent certainty. On August 11, 2012, Maldonado identified Kuhl in a photo array with 80 percent certainty. On September 18, 2012, Evans identified Kuhl from a different photo array with 70 percent certainty, and Bishop identified Kuhl with 100 percent certainty.

{¶11} Detective Kubas further testified that he interviewed Kuhl in late August 2012. Kuhl initially mentioned a fight at a different location and stated that he had acted in self-defense. He then admitted that his truck was at Mandy's, but he denied participating in a fight. He did not interview the individual known as "Chico" or "Jose."

{¶12} Kuhl elected not to call witnesses. The jury subsequently convicted him of the felonious assault charge, and the court convicted him of the prior conviction and

---

[1]The photo arrays were presented by another detective who initialed the photo array instruction sheet.

repeat offender specifications in connection with a 1990 burglary conviction. On June 25, 2013, he was sentenced to four years of imprisonment and three years of postrelease control sanctions.

{¶13} Kuhl appeals, assigning a single error for our review.

Appellant's conviction was against the manifest weight of the evidence.

{¶14} In reviewing a challenge to the manifest weight of the evidence, the court, after reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Id.* at 387, citing *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982).

{¶15} Although appellate review includes the responsibility to consider the credibility of witnesses and weight given to the evidence, "these issues are primarily matters for the trier of fact to decide since the trier of fact is in the best position to judge the credibility of the witnesses and the weight to be given the evidence." *State v. Walker*, 12th Dist. Butler No. CA2006-04-085, 2007-Ohio-911, ¶ 26. Therefore, an appellate court will overturn a conviction due to the manifest weight of the evidence only

in extraordinary circumstances to correct a manifest miscarriage of justice, and only when the evidence presented at trial weighs heavily in favor of acquittal. *Thompkins* at 386.

{¶16} In this matter, the testimony of Bishop established that an individual named "Chico" or "Jose" — started an argument outside of the bar, that Kuhl was among those present outside the bar, and that the fight escalated to a physical confrontation. Evans testified that a man with "dirty-blond hair and facial hair," identified in the September 18, 2012 photo array and in court as Kuhl, struck Velez in the head. The man fled in a red and white pickup truck. The testimony of Maldonado established that a man with "dirty-blond hair" and a "bulldog face," later identified as Kuhl, struck Velez and fled in a dark pickup truck. The license plate noted by Maldonado was later linked to Kuhl. We acknowledge the inconsistencies in the testimony, but conflicting evidence and inconsistencies in the testimony generally do not render the verdict against the manifest weight of the evidence. *State v. Banks*, 10th Dist. Franklin No. 09AP-13, 2009-Ohio-4383, ¶ 15; *State v. McDaniel*, 10th Dist. Franklin No. 06AP-44, 2006-Ohio-5298, ¶ 16. Moreover, the jurors were in the best position to evaluate these inconsistencies and determine the credibility of the witnesses and the weight to be given the evidence. Viewing the record as a whole, we cannot say that the jury clearly lost its way and created a manifest miscarriage of justice in convicting Kuhl of the charges. The convictions are supported by the manifest weight of the evidence.

{¶17} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, JUDGE

KATHLEEN ANN KEOUGH, P.J., and
PATRICIA A. BLACKMON, J., CONCUR