[Cite as *State v. Abdullahi* , 2018-Ohio-5146.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                     :

      Plaintiff-Appellee,                  :                    No. 18AP-222
                                                                              (C.P.C. No. 16CR-6366)
v.                                                        :

                                                                           (REGULAR CALENDAR)
Liban Abdullahi,                               :

      Defendant-Appellant.             :

---

D E C I S I O N

Rendered on December 20, 2018

---

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Barbara A. Farnbacher*, for appellee. **Argued:** *Barbara A. Farnbacher.*

**On brief:** *Anzelmo Law,* and *James A. Anzelmo*, for appellant. **Argued:** *James A. Anzelmo.*

---

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1} Defendant-appellant, Liban Abdullahi, appeals from a judgment entry of the Franklin County Court of Common Pleas finding him guilty of two counts of rape and one count of kidnapping. For the following reasons, we affirm.

**I. Facts and Procedural History**

{¶ 2} By indictment filed November 15, 2016, plaintiff-appellee, State of Ohio, charged Abdullahi with three counts of rape in violation of R.C. 2907.02, all first-degree felonies; and one count of kidnapping in violation of R.C. 2905.01, a first-degree felony. The indictment stated the offenses all occurred on September 17, 2015 and that the victim of the offenses was A.D. Abdullahi entered a plea of not guilty. Subsequently, Abdullahi waived his right to a jury trial and requested instead a bench trial.

{¶ 3} At the bench trial beginning September 25, 2017, Dana Houseberg, an officer with the Columbus Division of Police, testified that she responded to a disturbance call on September 17, 2015 that a woman had been raped and that the suspect was still present at the scene. The address given for the disturbance call was Walford Street, but Officer Houseberg said the caller flagged her down in her cruiser as she arrived. Once she arrived, Officer Houseberg testified she encountered A.D. who was "visibly upset, shaken, [and] crying." (Tr. at 19.) A.D. does not speak English fluently and had two interpreters with her, who identified themselves as A.D.'s casework and case manager through the Community Refugee and Immigration Services ("CRIS") who helped her call 911 and were helping A.D. communicate with Officer Houseberg.

{¶ 4} Through the interpreter, A.D. told Officer Houseberg that she went to Abdullahi's house to get a ride to work as had been arranged by her caseworker. A.D. told Officer Houseberg she knew Abdullahi's wife and had asked to visit with his wife, so Abdullahi let her inside only for A.D. to learn his wife was not home. At that point, A.D. told Officer Houseberg that Abdullahi raped her. Based on A.D.'s statements to her, Officer Houseberg testified she called for a medic to transport A.D. to a hospital. The caseworker and the case manager helped Officer Houseberg locate Abdullahi who was "[j]ust sitting out in front of his apartment." (Tr. at 21.)

{¶ 5} A.D. testified, through an interpreter, that she is 42 years old and that she immigrated to the United States from Somalia in 2012. A.D. stated she did not know Abdullahi before September 17, 2015 but that she knew his wife through CRIS. According to A.D.'s testimony, on September 17, 2015, someone at CRIS arranged for A.D. to get a ride to work with Abdullahi. A.D. stated she arrived at Abdullahi's house and asked if she could visit with his wife because A.D. knew Abdullahi's wife had recently had a baby. A.D. testified Abdullahi told her that his wife was home and told her to go inside his home to see his wife. Upon entering the house, A.D. testified she realized his wife was not home, so she called Abdullahi's wife who confirmed she was not home. A.D. said that she told Abdullahi's wife that she would wait inside her home until she returned so the two could visit.

{¶ 6} When she finished the phone call, A.D. said she told Abdullahi that she would go out to buy ice while she waited for Abdullahi's wife to return home. At that point, A.D. said she made her way to the exit of the house but that Abdullahi grabbed her from behind.

A.D. testified she tried to defend herself and shouted loudly but that Abdullahi forced her to the ground. When A.D. screamed, she testified Abdullahi covered her mouth with his hands until she stopped screaming. A.D. testified that Abdullahi then "did what he wanted to do," then told her she could "now get up," and she said she ran to the restroom. (Tr. at 35.) When asked to clarify what that meant, A.D. said Abdullahi "[r]aped [her]. He raped [her] with his mouth and he used his nails and scratched [her] skin." (Tr. at 35.) A.D. described the experience as "painful" and "horrible." (Tr. at 35, 36.)

{¶ 7} A.D. testified she then fled the apartment and called police but because she did not know the address of Abdullahi's residence, she called CRIS for assistance. The caseworker and case manager from CRIS arrived shortly thereafter and helped A.D. communicate with police. She testified she was taken to the hospital where she was examined. A.D. identified Abdullahi in court as the man who raped her.

{¶ 8} Katherine Ketz, a sexual assault nurse examiner at Mount Carmel Healthcare System, testified she examined A.D. on September 17, 2015. Ketz described A.D. as "tearful, * * * angry, and sad." (Tr. at 79.) Relying on her report from her examination, Ketz testified that A.D. told her that Abdullahi grabbed her, sat on her to pin her down, slammed her head into the ground, and eventually exhausted her until she stopped fighting him. Ketz testified that A.D. reported that she was very embarrassed to speak about the details of what happened to her but that the assailant penetrated her with both his fingers and his penis. Additionally, Ketz stated A.D. was not sure about oral contact with her genitals because she reported losing consciousness during the attack.

{¶ 9} Ketz also described her physical examination of A.D. Ketz testified that A.D. had tenderness to her wrist, red markings on her neck, and flushing on her cheek. Additionally, Ketz documented abrasions on A.D.'s posterior fourchette. Ketz testified that A.D.'s physical examination and injuries were consistent with A.D.'s description of the attack.

{¶ 10} Joshua Martin, a detective with the Columbus Division of Police, testified that he conducted the investigation into A.D.'s allegations. Detective Martin testified that he interviewed Abdullahi, and the state played the video recording of that interview for the court. During the interview, Abdullahi said that A.D. came to his house that day and said she might need to find a pair of pants to wear to work so she went into his bedroom to look

for clothes. Abdullahi said that A.D. got stuck trying to put the pants on so he tried to help her take the pants off. At that point, Abdullahi said that A.D. tried to kiss him but he pushed her away. Abdullahi denied having sex with A.D. that day and denied that he had had a prior sexual relationship with A.D. Detective Martin stated he obtained a DNA sample from Abdullahi.

{¶ 11} Amanda Fashano, a forensic scientist for the Columbus Division of Police crime laboratory, testified that she conducted the DNA analyses of the evidence obtained during the investigation. Fashano testified that male DNA, in the form of semen, was detected on the vaginal and anal swabs obtained from A.D. during her sexual assault examination. Fashano testified that the testing indicated Abdullahi was the source of the male DNA recovered from the anal swabs.

{¶ 12} After the state concluded its presentation, Habiba Hassan, Abdullahi's wife, testified for the defense. Hassan testified that she met A.D. through classes they took at CRIS. Hassan said in her testimony that A.D. and Abdullahi knew each other before September 17, 2015 and claimed that A.D. and Abdullahi had an affair. Additionally, Hassan testified that on September 17, 2015, Abdullahi called her and told her that A.D. was trying to falsely accuse him of rape. Hassan additionally testified that A.D. had said she wanted marry Abdullahi.

{¶ 13} Abdullahi testified in his own defense. According to his testimony, Abdullahi claimed that he had an ongoing romantic relationship with A.D. and that he had consensual sex with A.D. approximately seven times before September 17, 2015. Additionally, Abdullahi testified that he had sex with A.D. at his house on September 17, 2015, but he said it was consensual sex. After having sex, Abdullahi said he told A.D. she needed to leave but that A.D. refused to leave, so Abdullahi testified that he grabbed both of A.D.'s arms and attempted to force A.D. out of his home.

{¶ 14} Abdullahi further testified that he lied during his interview with police about having sex with A.D. either that day or on any previous occasion because he did not want the detective to tell his wife that he had been unfaithful. Abdullahi testified that A.D. made up the story about being raped because she was angry and vengeful.

{¶ 15} At the conclusion of the bench trial, the trial court found Abdullahi guilty of two counts of rape and one count of kidnapping. Following a March 8, 2018 sentencing

hearing, the trial court sentenced Abdullahi to an aggregate prison term of seven years. The trial court journalized Abdullahi's convictions and sentence in a March 23, 2018 judgment entry. Abdullahi timely appeals.

## II. Assignments of Error

{¶ 16} Abdullahi assigns the following errors for our review:

[1.] The trial court abused its discretion by admitting into evidence an unauthenticated medical record, in violation of Abdullahi's rights to a Fair Trial and Due Process guaranteed by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Sections 1, 10 and 16, Article I of the Ohio Constitution.

[2.] Abdullahi's convictions for rape and kidnapping are against the manifest weight of the evidence in violation of the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution and Sections 1 & 16, Article I of the Ohio Constitution.

[3.] Abdullahi's convictions for rape and kidnapping are based on insufficient evidence, in violation of the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution and Sections 1 & 16, Article I of the Ohio Constitution.

[4.] The trial court committed plain error by not merging Abdullahi's kidnapping offense with the rape offenses, in violation of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution.

[5.] Abdullahi received ineffective assistance of counsel, in violation of the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution.

## III. First Assignment of Error – Evidentiary Ruling

{¶ 17} In his first assignment of error, Abdullahi argues the trial court erred when it admitted into evidence a physician note from the emergency department without proper authentication. Generally, the admission or exclusion of evidence lies in the sound discretion of the trial court, and we will not disturb that discretion absent an abuse of discretion. *State v. Darazim*, 10th Dist. No. 14AP-203, 2014-Ohio-5304, ¶ 16, citing *State*

*v. Issa*, 93 Ohio St.3d 49, 64 (2001). An abuse of discretion implies that the court's attitude was unreasonable, arbitrary, or unconscionable.

{¶ 18} Abdullahi asserts the trial court erroneously admitted both State's exhibit H, a physician's note from the emergency department on the day A.D. received a sexual assault examination, and Ketz's testimony regarding that physician's note. Abdullahi argues the physician's note was a business record that had not been properly authenticated under Evid.R. 803(6). At the trial court, Abdullahi objected to the admission of State's exhibit H as well as Ketz's testimony. The trial court overruled Abdullahi's objection on the grounds that Ketz relied on the note for her treatment of the victim and that the note, itself, was admissible as statements made for purposes of medical diagnosis or treatment.

{¶ 19} Evid.R. 901(A) provides that the "requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Evid.R. 901(B) provides a non-exhaustive list of examples of authentication or identification conforming with the requirements of the rule including testimony of a witness with knowledge that a matter is what it is claimed to be. Evid.R. 901(B)(1). "Courts have interpreted Evid.R. 901(B) to allow any competent witness who has knowledge that a matter is what its proponent claims may testify to such pertinent facts, thereby establishing, in whole or in part, the foundation for identification." (Internal quotations omitted.) *State v. Ross*, 10th Dist. No. 17AP-141, 2018-Ohio-3027, ¶ 37.

{¶ 20} Abdullahi argues Ketz could not authenticate State's exhibit H because she was not the author of the document. However, in her testimony, Ketz identified State's exhibit H as an emergency physician's note about A.D.'s patient history of present illness, and she testified she reviews all notes about a patient and any prior testing before she performs her examination and orders treatment. Thus, Ketz's testimony was sufficient authentication for the physician's note pursuant to Evid.R. 901.

{¶ 21} A statement is impermissible hearsay when it is an out-of-court statement offered for the truth of the matter asserted. Evid.R. 801(C) and 802. However, pursuant to Evid.R. 803(4), "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the

inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment" are excepted from the hearsay rule.

{¶ 22} State's exhibit H contained a brief "History of Present Illness" section in which the note's author stated that A.D. was in the emergency department "for reported sexual assault," and that "[s]pecifics regarding assault will be deferred to social worker, detectives, and [sexual assault nurse examiner]." These were statements made for purposes of medical diagnosis or treatment within the purview of Evid.R. 803(4).

{¶ 23} Accordingly, we overrule Abdullahi's first assignment of error.

## IV.  Second Assignment of Error – Manifest Weight of the Evidence

{¶ 24} In his second assignment of error, Abdullahi argues his convictions are against the manifest weight of the evidence.

{¶ 25} When presented with a manifest weight argument, an appellate court engages in a limited weighing of the evidence to determine whether sufficient competent, credible evidence supports the jury's verdict.  *State v. Salinas*, 10th Dist. No. 09AP-1201, 2010-Ohio-4738, ¶ 32, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).  "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony."  *Thompkins* at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982).  Determinations of credibility and weight of the testimony are primarily for the trier of fact.  *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus.  Thus, the jury may take note of the inconsistencies and resolve them accordingly, "believ[ing] all, part, or none of a witness's testimony."  *State v. Raver*, 10th Dist. No. 02AP-604, 2003-Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67 (1964).

{¶ 26} An appellate court considering a manifest weight challenge "may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."  *State v. Harris*, 10th Dist. No. 13AP-770, 2014-Ohio-2501, ¶ 22, citing *Thompkins* at 387.  Appellate courts should reverse a conviction as being against the manifest weight of the evidence only in the most " 'exceptional case in which the evidence

weighs heavily against the conviction.' " *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶ 27} The trial court convicted Abdullahi of one count of forcible rape through vaginal intercourse, one count of forcible rape through digital penetration, and one count of kidnapping. To convict a defendant of rape under R.C. 2907.02(A)(2), the state is required to prove the defendant engaged in sexual conduct with the victim by purposely compelling the victim to submit by force or threat of force. As defined in R.C. 2907.01(A), "sexual conduct" includes both vaginal intercourse between a male and female and "the insertion, however slight, of any part of the body * * * into the vaginal or anal opening of another." Additionally, to convict a defendant of kidnapping under R.C. 2905.01, the state is required to prove the defendant restrained the liberty of the victim in order to engage in sexual activity with the victim against the victim's will. R.C. 2905.01(A)(4).

{¶ 28} Abdullahi argues his convictions are against the manifest weight of the evidence because there was not credible evidence that he engaged in sexual conduct with A.D. by force or that he restrained her liberty in order to engage in sexual conduct with her. More specifically, Abdullahi asserts that A.D.'s testimony was not credible and that the trial court instead should have believed his own testimony that the sexual conduct was consensual.

{¶ 29} Abdullahi argues A.D.'s testimony lacked credibility because there were inconsistencies between her testimony and statements she made to police and medical professionals prior to trial. However, the mere presence of conflicting evidence is not enough to render a conviction against the manifest weight of the evidence. *State v. McDaniel*, 10th Dist. No. 06AP-44, 2006-Ohio-5298, ¶ 16 (stating "[c]onflicting evidence and inconsistences in the testimony, however, generally do not render the verdict against the manifest weight of the evidence"). Despite Abdullahi's attempt to point out minor inconsistencies in A.D.'s testimony with her out-of-court statements, we note that Ketz's testimony regarding A.D.'s medical exam corroborated A.D.'s testimony. Moreover, Ketz testified that her physical findings during the sexual assault exam were entirely consistent with A.D.'s version of events.

{¶ 30} To the extent Abdullahi argues the trial court lost its way when it believed A.D.'s testimony over his own and that of his wife, we note that the trial court specifically

found A.D. to be a more credible witness. *State v. Cattledge*, 10th Dist. No. 10AP-105, 2010-Ohio-4953, ¶ 6 (noting the trial court in a bench trial is in the best position to view the witnesses, make observations, and weigh the credibility of the proffered testimony). Though Abdullahi argues the trial court should have believed his testimony that the encounter was consensual, it was entirely inconsistent with the statement he gave to police that he had never had a sexual encounter with A.D. "A conviction is not against the manifest weight of the evidence because the [trier of fact] chose to believe the state's version of events over the defendant's version." *State v. Hawk*, 10th Dist. No. 12AP-895, 2013-Ohio-5794, ¶ 59. Our review of the transcript indicates the trial court did not lose its way in giving more weight to A.D.'s testimony than to Abdullahi's self-serving testimony.

{¶ 31} Having reviewed the entire record, we conclude the manifest weight of the evidence supports Abdullahi's convictions. Accordingly, we overrule his second assignment of error.

## V. Third Assignment of Error – Sufficiency of the Evidence

{¶ 32} In his third assignment of error, Abdullahi argues sufficient evidence does not support his convictions.

{¶ 33} Whether there is legally sufficient evidence to sustain a verdict is a question of law. *Thompkins* at 386. Sufficiency is a test of adequacy. *Id.* The relevant inquiry for an appellate court is whether the evidence presented, when viewed in a light most favorable to the prosecution, would allow any rational trier of fact to find the essential elements of the crime proven beyond a reasonable doubt. *State v. Mahone*, 10th Dist. No. 12AP-545, 2014-Ohio-1251, ¶ 38, citing *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, ¶ 37.

{¶ 34} Abdullahi asserts the record contains evidence that the sexual conduct was consensual and that Abdullahi did not restrain A.D.'s liberty and, therefore, there is insufficient evidence to support his convictions. However, Abdullahi's argument focuses solely on his own testimony and completely neglects the rest of the record. A.D. testified Abdullahi restrained her when she tried to leave the apartment and forced her to submit to nonconsensual sex, both through vaginal intercourse and digital penetration. A victim's testimony, alone, is sufficient to support a conviction. *State v. W.J.*, 10th Dist. No. 14AP-457, 2015-Ohio-2353, ¶ 35, citing *State v. Johnson*, 112 Ohio St.3d 210, 2006-Ohio-6404, ¶ 53 (noting "[c]orroboration of victim testimony in rape cases is not required").

{¶ 35} Having reviewed the record, we conclude the state presented sufficient evidence of the two counts of rape and one count of kidnapping. Accordingly, we overrule Abdullahi's third assignment of error.

## VI. Fourth Assignment of Error – Merger

{¶ 36} In his fourth assignment of error, Abdullahi asserts the trial court erred when it failed to merge the offenses of rape and kidnapping.

{¶ 37} Abdullahi did not object to the trial court's failure to merge his convictions at the trial court, and thus our review is limited to plain error. *State v. Adams*, 10th Dist. No. 13AP-783, 2014-Ohio-1809, ¶ 6, citing *State v. Taylor*, 10th Dist. No. 10AP-939, 2011-Ohio-3162, ¶ 34. A trial court's failure to merge convictions on allied offenses constitutes plain error. *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, ¶ 31.

{¶ 38} In reviewing a trial court's determination of whether a defendant's offenses should merge pursuant to the multiple counts statute, an appellate court reviews the trial court's R.C. 2941.25 determination de novo. *State v. S.S.*, 10th Dist. No. 13AP-1060, 2014-Ohio-5352, ¶ 28, citing *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, ¶ 1. " 'Appellate courts apply the law to the facts of individual cases to make a legal determination as to whether R.C. 2941.25 allows multiple convictions. That facts are involved in the analysis does not make the issue a question of fact deserving of deference to a trial court.' " *S.S.* at ¶ 28, quoting *Williams* at ¶ 25.

{¶ 39} R.C. 2941.25 provides:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 40} Abdullahi argues the trial court erred when it failed to merge the offenses of rape and kidnapping for purposes of sentencing. "When the defendant's conduct constitutes a single offense, the defendant may be convicted and punished only for that

offense.  When the conduct supports more than one offense, however, a court must conduct an analysis of allied offenses of similar import to determine whether the offenses merge or whether the defendant may be convicted of separate offenses."  *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, ¶ 24.

{¶ 41} "To determine whether two offenses are allied offenses that merge into a single conviction, a court must evaluate three separate factors: the conduct, the animus, and the import."  *State v. Harris*, 10th Dist. No. 15AP-683, 2016-Ohio-3424, ¶ 42, citing *Ruff* at paragraph one of the syllabus.  "If any of the following is true, the offenses cannot merge and the defendant may be convicted and sentenced for multiple offenses: (1) the offenses are dissimilar in import or significance—in other words, each offense caused separate, identifiable harm, (2) the offenses were committed separately, and (3) the offenses were committed with separate animus or motivation."  *Ruff* at ¶ 25.  Ultimately, if the harm resulting from each offense is separate and identifiable, the offenses are of dissimilar import and do not merge.  *Harris*, 2016-Ohio-3424, at ¶ 42, citing *Ruff* at ¶ 25.

{¶ 42} In conducting an analysis of whether two offenses are allied offenses of similar import, the Supreme Court of Ohio directs an appellate court to look beyond the statutory elements and to consider the defendant's conduct.  "A trial court and the reviewing court on appeal when considering whether there are allied offenses that merge into a single conviction under R.C. 2941.25(A) must first take into account the conduct of the defendant.  In other words, how were the offenses committed?"  *Ruff* at ¶ 25.

{¶ 43}  Here, Abdullahi argues the restraint of A.D.'s liberty lasted no longer than the time it took to facilitate the commission of the rape, and, thus, the convictions must merge.  *See State v. Sidibeh*, 192 Ohio App.3d 256, 2011-Ohio-712, ¶ 59, 61 (holding that where the kidnapping was "merely incidental" to, and stemmed from the same conduct as, the offense of aggravated robbery, the two offenses must merge).  However, A.D.'s testimony at trial indicated that as she attempted to leave Abdullahi's home, Abdullahi grabbed her and forced her to the ground, covered her mouth, and held her there until she ran out of energy to continue screaming, placing his knees on her chest to restrain her.  Only after this conduct did Abdullahi then forcibly engage in sexual conduct with A.D.

{¶ 44}  Moreover, Abdullahi does not account for the harm that was distinct to the kidnapping.  A.D. testified that while she had physical trauma to her genitals from the rape,

she also had injuries to her face, neck, and wrists from Abdullahi's conduct to restrain her before he raped her. We find these injuries to be separate, identifiable harm than that caused by the forcible sexual conduct. *Harris*, 2016-Ohio-3424, at ¶ 42.

{¶ 45} Thus, based on this record, we conclude the trial court did not plainly err when it did not merge Abdullahi's convictions for rape and kidnapping. On these facts, the offenses were committed separately and caused separate, identifiable harm. We overrule Abdullahi's fourth assignment of error.

## VII.  Fifth Assignment of Error – Ineffective Assistance

{¶ 46} In his fifth and final assignment of error, Abdullahi argues he received ineffective assistance of counsel. More specifically, Abdullahi asserts his trial counsel was ineffective in not objecting to the trial court's failure to merge the offenses of rape and kidnapping for purposes of sentencing.

{¶ 47} In order to prevail on a claim of ineffective assistance of counsel, Abdullahi must satisfy a two-prong test. First, he must demonstrate that his counsel's performance was deficient. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). This first prong requires Abdullahi to show that his counsel committed errors which were "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* If Abdullahi can so demonstrate, he must then establish he was prejudiced by the deficient performance. *Id.* To show prejudice, Abdullahi must establish there is a reasonable probability that, but for his counsel's errors, the result of the trial would have been different. A "reasonable probability" is one sufficient to undermine confidence in the outcome of the trial. *Id.* at 694.

{¶ 48} In considering claims of ineffective assistance of counsel, courts indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 101. Abdullahi contends his trial counsel was ineffective in failing to properly object when the trial court did not merge his kidnapping conviction with his rape conviction for purposes of sentencing.

{¶ 49} Abdullahi's argument reflects the argument he made under his fourth assignment of error on appeal. Because Abdullahi's trial counsel failed to object to the trial court's merger decision, we reviewed Abdullahi's argument under a plain error standard,

and, in disposing of that argument, we concluded Abdullahi was unable to demonstrate plain error. " '[W]here the failure to object does not constitute plain error, the issue cannot be reversed by claiming ineffective assistance of counsel.' " *State v. Roy*, 10th Dist. No. 14AP-223, 2014-Ohio-4587, ¶ 20, quoting *State v. Carson*, 10th Dist. No. 05AP-13, 2006-Ohio-2440, ¶ 51. Having previously held, in addressing Abdullahi's fourth assignment of error, that the trial court did not plainly err when it did not merge his convictions, we conclude Abdullahi's argument in this regard fails to satisfy the second prong of the *Strickland* test.

{¶ 50} Thus, because Abdullahi cannot satisfy the *Strickland* test, Abdullahi's claim of ineffective assistance of counsel must fail. Accordingly, we overrule his fifth and final assignment of error.

## VIII. Disposition

{¶ 51} Based on the foregoing reasons, the trial court did not abuse its discretion in its evidentiary rulings, the sufficiency and manifest weight of the evidence supports Abdullahi's convictions, the trial court did not err in failing to merge his convictions for rape and kidnapping, and Abdullahi did not receive ineffective assistance of counsel. Having overruled Abdullahi's five assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BROWN, P.J., and DORRIAN, J., concur.

_____