[Cite as *State v. Fleming*, 2025-Ohio-3165.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | C.A. No. 2024-CA-38 |
| Appellee | : | |
| | : | Trial Court Case No. 23-CR-0550 |
| v. | : | |
| | : | (Criminal Appeal from Common Pleas |
| JERREL FLEMING | : | Court) |
| | : | |
| Appellant | : | **FINAL JUDGMENT ENTRY &** |
| | : | **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on September 5, 2025, the judgment of the trial court is reversed, and the matter is remanded for further proceedings.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

MICHAEL L. TUCKER, JUDGE

HUFFMAN, J., and HANSEMAN, J., concur.

**OPINION**
CLARK C.A. No. 2024-CA-38

LUCAS W. WILDER, Attorney for Appellant
ROBERT C. LOGSDON, Attorney for Appellee

TUCKER, J.

{¶ 1} Defendant-appellant Jerrel Fleming appeals from his conviction for felony murder, discharge of a weapon on or near a prohibited premises, and having a weapon under disability. For the reasons set forth below, we reverse and remand for further proceedings.

## I. Factual and Procedural History

{¶ 2} This case arose from the August 7, 2023, shooting death of R.F. Video footage recorded on that date by surveillance cameras at the Wayside Tavern in Springfield depicted a Nissan Altima pulling into the parking lot of the bar. R.F. was driving the Altima, and there were three passengers in the vehicle with him. The four remained in the Altima for a few minutes, at which point a Chevy Equinox entered the lot. The Altima then exited the lot, turned, and pulled back into the lot behind the Equinox. Someone in the Altima began shooting at the Equinox. Although it is not clear who was shooting, there was testimony that R.F. and one of the passengers had guns. Afterward, the Altima pulled out of the lot and drove away. The Equinox followed.

{¶ 3} A high-speed chase ensued during which the vehicles exchanged gunfire. Footage from a street camera depicted that, as the Equinox followed the Altima into an intersection, the driver of the Equinox fired a gun toward the Altima. The Altima then crashed at the intersection of East North and North Springfield Streets. R.F. and the

passengers exited and ran away; R.F. ran toward a nearby post office. The Equinox then drove toward the post office parking lot, which was where R.F. was shot.

{¶ 4} Following an investigation, Fleming was indicted on one count of murder in violation of R.C. 2903.02(A), one count of felonious assault in violation of R.C. 2903.11(A)(2), one count of murder in violation of R.C. 2903.02(B), one count of discharge of a firearm on or near prohibited premises in violation of R.C. 2923.162(A)(3), and one count of having weapons under disability in violation of R.C. 2923.13(A)(3).[1] Each murder charge and the felonious assault charge carried two firearm specifications.

{¶ 5} Central to this appeal, on May 8, 2024, the State effected personal service of a subpoena upon C.R. to appear as a witness at trial. The trial commenced on June 10, 2024. On June 11, 2024, outside of the presence of the jury, the State informed the court that C.R. had failed to appear. At the State's request, the trial court issued a capias for C.R.'s arrest to compel her appearance and to show cause why she should not be found in contempt of court.

{¶ 6} On June 12, 2024, the State filed a "notice of intent to introduce hearsay evidence pursuant to Evid.R. 804(B)(6)." In the notice, the State indicated that it wanted to play a recorded phone call between Detective Massie and C.R. for the jury. The matter was again discussed outside the presence of the jury. Noting that the court had issued a show cause order for C.R. to appear the previous day, the prosecutor stated: "This morning the State uncovered information that . . . makes us believe she is not coming because of interference either directed or on behalf of the Defendant. . . . Based on that evidence, we believe that earlier statements by [C.R.] could be admissible under forfeiture by

---

[1] Fleming was also indicted on one count of having weapons under disability in violation of R.C. 2923.13(A)(2), but that count was dismissed prior to trial.

wrongdoing . . . ."  The court then conducted a hearing during which the following colloquy took place:

> THE STATE:  Your Honor, this morning we became aware of a phone call between the Defendant and an individual who we believe to be Brandy Owens. During that phone call they discuss [C.R.] and her absence from the court.   In that phone call the Defendant and Ms. Owen talk about the multiple people within his friend group that have contacted her and how she is [sic] attempted to block them and he directs Ms. Owens to send Tuna out to talk to her.
>
> Tuna is a street name of Adonte Cherry who was here on the first day of trial and it is our belief that Mr. Cherry was the one who filmed and posted the filming of the witness who had taken the stand in this case.   Viewed in the totality of the circumstances, Your Honor, I think that this can be seen as an effort to discourage and frighten [C.R.] from coming to trial.   I would like to play that phone call.   It's about a 7-minute call.
>
> THE COURT:  Just before you do that, just so the record's clear, this witness was subpoenaed, ordered to appear on Monday, the first day of trial. We did meet in chambers I think Monday afternoon or maybe Tuesday morning.
>
> THE STATE:  It was Tuesday morning.
>
> THE COURT:  Tuesday morning, that the witness did not appear. The Court issued a warrant for her arrest to be brought before the Court to show cause as to why she should not be held in contempt of court.   I believe that warrant is outstanding right now.  To my knowledge, she still has not appeared and I'm getting information, anyway, she still has not appeared.

And before I listen to the phone call, can you tell me again who the phone call is between?

THE STATE:   It's between the Defendant and an individual we believe to be Brandy Owen . . . who has also been in the courtroom, I guess, during this trial.

THE COURT:   And when did the phone call take place?

THE STATE:   . . . June 11th at 19:29 hours, 7:29 in normal person time.

{¶ 7} The State then played the recording of the phone call for the court.   At the beginning of the call, Owens stated that she had finished with her hair appointment and was on her way home.[2]   She then stated that she had just spoken on the phone to C.R.  Fleming asked, "what's wrong with her?"   Owens replied that a warrant had been issued for C.R. to appear in court and that Detective Massie had told C.R. she was required to appear.  Fleming then asked, "what do they want her to do?"   Owens stated, "that's what [C.R.] asked.   I said I don't know."   Fleming then asked if Owens had "hollered" at "Tuna," and Owens responded that she had.   Fleming stated, "shit, tell him to holler at her."   Owens stated, "he did, she won't answer her phone.   She blocked all of them because she said she's tired of motherfuckers calling her about it."   Owens also stated that C.R. was a "different type of scared."   Fleming asked what C.R. was "scared of," and Owens replied, "I don't know.   She said they both my friends."   Owens then stated that C.R. was friends with both Fleming and the victim.

---

[2] The State referred to the woman on the phone call both as Brandy Owens and Brandy Owen.   Although the State failed to definitively identify the woman, other than to state that it "believe[d]" her to be Brandy Owen, we refer to her as Owens for ease of reference.

{¶ 8} During the hearing, Fleming and his counsel addressed the court and indicated that they wanted C.R. to appear for trial.

{¶ 9} Later that day, the court indicated that it would not rule on the motion until the following morning to provide more time for C.R. to appear. However, the court made findings on the record in which it rejected Fleming's claim that the defense wanted her to appear. The court stated that it would take judicial notice that "Tuna is a pretty bad dude" who the court had previously sentenced to prison. The court also stated that Tuna "could be a pretty intimidating guy." Finally, the court noted that during the call between Owens and Fleming, Fleming said "she be on the phone so watch what you be saying." The court concluded that Fleming was "probably referring to the Prosecutor. So there's not going to be an express directive or order. And I think about as close to that as you can get is saying, 'shit, tell Tuna to holler at her.'"

{¶ 10} The following day, C.R. again failed to appear, and the trial court permitted the State to play the audio of C.R.'s phone conversation with Det. Massie. The court also filed a written decision sustaining the State's request to use the recorded call. In the decision, the court stated it did not find credible Fleming's claim that he wanted C.R. to testify, because he had not subpoenaed her and because her testimony would be damaging to his defense. In fact, C.R., who informed Det. Massie that she had been a passenger in the Equinox, was the only witness who indicated that Fleming was the driver of the Equinox. The court further noted that "Tuna" was the street name of Adonte Cherry, Fleming's close associate. The court stated that Cherry had multiple prior convictions and that Cherry had harassed and/or retaliated against one of the State's witnesses by recording the witness's testimony and later posting it on social media. The court concluded by stating, "[b]ased upon the totality of the facts and circumstances, the Court has drawn an inference, thereby reaching a reasonable

conclusion of fact, that [C.R.] has not appeared pursuant to subpoena, at least in part but most likely in whole, due to her fear of retaliation from the defendant and his associates."

{¶ 11} The jury acquitted Fleming of the count of murder in violation of R.C. 2903.02(A) but convicted him of the remaining charges and the attendant firearm specifications. Fleming was sentenced to an aggregate prison term of 46.5 years to life.

{¶ 12} Fleming appeals.

## II.      Admissibility of C.R.'s Statement

{¶ 13} Fleming's first assignment of error states:

FLEMING WAS DENIED THE RIGHT TO A FAIR TRIAL WHEN THE TRIAL COURT ALLOWED THE RECORDED TESTIMONY OF [C.R.] TO BE PLAYED AT TRIAL.

{¶ 14} Fleming asserts the trial court erred in admitting the statement C.R. made to Det. Massie. Specifically, he argues the statement was hearsay which the trial court improperly determined to be admissible under the forfeiture by wrongdoing exception to the hearsay rule. Fleming also argues the admission of the statement violated his Sixth Amendment right to confront witnesses.

{¶ 15} This issue was discussed recently in *State v. Dillion*, 2023-Ohio-777 (10th Dist.), wherein the court stated:

A statement is impermissible hearsay when it is an out-of-court statement offered for the truth of the matter asserted. Evid.R. 801(C) and 802. However, pursuant to Evid.R. 804(B)(6), a statement that is offered against a party is not excluded by the hearsay rule if the declarant is unavailable as a witness and "the unavailability of the witness is due to the wrongdoing of the

party for the purpose of preventing the witness from attending or testifying." This rule is known as the doctrine of forfeiture by wrongdoing. *State v. McKelton*, 2016-Ohio-5735, ¶ 96.

The doctrine of forfeiture by wrongdoing creates an equitable exception to a defendant's constitutional right to confront the witnesses against him or her. *State v. Bias*, 2022-Ohio-4643, ¶ 59 (10th Dist.), citing *McKelton* at ¶ 96, citing *Giles v. California*, 554 U.S. 353, 366 (2008). Codified at Evid.R. 804(B)(6), the doctrine of forfeiture by wrongdoing permits the state to use hearsay statements of an unavailable witness if the state can show, by a preponderance of the evidence, that " '(1) the defendant engaged in wrongdoing that caused the witness to be unavailable and (2) one purpose for the wrongdoing was to make the witness unavailable to testify.' " *Bias* at ¶ 59, quoting *McKelton* at ¶ 96, citing *State v. Fry*, 2010-Ohio-1017, ¶ 106, and *State v. Hand*, 2006-Ohio-18, ¶ 84. A preponderance of the evidence means "the existence of the fact sought to be proved is more likely than its nonexistence." *State ex rel. Doner v. Zody*, 2011-Ohio-6117, ¶ 54.

The forfeiture by wrongdoing exception applies to defendants who "seek to undermine the judicial process by procuring or coercing silence from witnesses." *Davis v. Washington*, 547 U.S. 813, 833 (2006). The state need not establish that the defendant's sole purpose was to prevent the witness from testifying; instead, the state must only show that the defendant's wrongdoing causing the witness's unavailability " 'was motivated *in part* by a desire to silence the witness.' " (Emphasis sic.) *Bias* at ¶ 59, quoting *Hand* at ¶ 90. Further, the type of wrongdoing contemplated by the rule " 'need not consist

of a criminal act.' " *State v. Donlow*, 2022-Ohio-1518, ¶ 32 (7th Dist.), quoting *State v. Henderson*, 2018-Ohio-5124, ¶ 21 (7th Dist).

Generally, the admission or exclusion of evidence lies in the sound discretion of the trial court, and we will not disturb that decision absent an abuse of discretion. *State v. Abdullahi*, 2018-Ohio-5146, ¶ 17 (10th Dist.), citing *State v. Darazim*, 2014-Ohio-5304, ¶ 16 (10th Dist.), citing *State v. Issa*, 93 Ohio St.3d 49, 64 (2001); *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983) (an abuse of discretion connotes a decision that was unreasonable, arbitrary, or unconscionable). However, where the evidentiary ruling implicates the Confrontation Clause, we review the ruling de novo. *Bias* at ¶ 60, citing *McKelton* at ¶ 97, citing *United States v. Henderson*, 626 F.3d 326, 333 (6th Cir. 2010).

*Id.* at ¶ 37-40.   *Accord State v. Dunn*, 2024-Ohio-600, ¶ 15 (2d Dist.).

{¶ 16} Fleming claims the trial court erred in finding that he had acted to prevent C.R. from testifying.   In support, he argues the State did not present any direct evidence that he took any action to prevent C.R.'s appearance at trial.

{¶ 17} Fleming is correct that the State did not present direct evidence of wrongdoing. However, circumstantial evidence has the same probative value as direct evidence.   *State v. Boyd*, 2025-Ohio-984, ¶ 37 (2d Dist.).   Although "Evid.R. 804(B)(6) requires the state to prove forfeiture by wrongdoing by a preponderance of the evidence, there is nothing in the rule requiring the state to rely only on direct evidence in satisfying its burden. Instead, a court considering the admissibility of a statement under the doctrine of forfeiture by wrongdoing may make 'rational inferences' from the evidence presented by the state to determine whether the defendant participated in procuring the witness's absence with the

intent to prevent the witness from testifying." (Citation omitted.) *Dillion,* 2023-Ohio-777, ¶ 42 (10th Dist.).

{¶ 18} As noted above, Fleming's trial began on July 10, 2024, and the State's subpoena had commanded C.R.'s appearance on that date. The call between Owens and Fleming did not take place until the following day at approximately 7:30 p.m. At that point, C.R. had already failed to appear for two days of trial. Further, the record does not contain any evidence that "Tuna" ever contacted C.R. Indeed, Owens indicated that numerous people, including Tuna, had been unable to contact C.R. Moreover, and of some importance, it was Owens, not Fleming, who first mentioned C.R. during the telephone conversation.

{¶ 19} Based on the record before us, we cannot conclude that the trial court made a reasonable inferential conclusion that Fleming's statements on the jail call constituted a wrongful effort to prevent C.R.'s testimony or that C.R.'s failure to appear was related to any conduct Fleming took or authorized. As such, the State failed to establish by the preponderance of the evidence that Fleming's conduct acted to forfeit his constitutional right to confront C.R. at trial. Thus, we conclude that the trial court erred by permitting the admission of the statement C.R. made to Det. Massie.

{¶ 20} The first assignment of error is sustained.

### III.     Authentication

{¶ 21} Fleming asserts the following as his third assignment of error:

> FLEMING WAS DENIED THE RIGHT TO A FAIR TRIAL WHEN THE
> TRIAL COURT ALLOWED TESTIMONY BY SETH DODSON CONCERNING
> CELL PHONE RECORDS WHICH WERE NOT AUTHENTICATED AT TRIAL.

{¶ 22} In this assignment of error, Fleming contends the trial court erred in the admission of evidence regarding his cell-phone records.

{¶ 23} Relevant hereto, the State presented the testimony of Seth Dodson, who was employed with the Ohio State Highway Patrol Criminal Intelligence Unit. Dodson testified that he had analyzed Fleming's cell-phone records and had been able to track the general location of Fleming's phone during the relevant time period. Dodson testified that the phone records were provided to him by Det. Massie. Massie testified that he had obtained search warrants for Fleming's cell-phone records. Fleming did not object to Dodson's testimony.

{¶ 24} The Supreme Court of Ohio has addressed the use of cell-phone records and the analysis of location data based on cell tower pings. *See State v. Hood*, 2012-Ohio-6208. In that case, the court noted that, because cell-phone records are generally business records that are not prepared for litigation and thus are not testimonial, the Confrontation Clause does not affect their admissibility. *Id.* at ¶ 34. However, the court noted that such evidence cannot be admitted as business records under Evid.R. 803(6) absent proper authentication by a custodian of the record or other qualified witness. *Id.* at ¶ 40. *Hood* deemed the evidence inadmissible because no foundation had been laid by a custodian of the records or any other qualified witness. Likewise, in this case, there was no testimony by a custodian of the records.

{¶ 25} However, we conclude that Dodson was a qualified witness for purposes of Evid.R. 803(6). *Contrast Hood* at ¶ 26 (the detective who compiled the location map using cell location data "did not have any expertise in cell phones or towers."). A "qualified witness" is someone with "enough familiarity with the record-keeping system of the business in question to explain how the record came into existence in the ordinary course of business." *Hood* at ¶ 40, quoting 5 McLaughlin, Weinstein's Federal Evidence, Section

803.08[8][a] (2d Ed. 2009).

{¶ 26} Dodson's testimony established that he had expertise in cell phones and towers and the analysis thereof for mapping locations. Indeed, he testified that he had been doing such work since 2017 and had been certified as a "subject matter expert in the field." His testimony established that he was familiar with the record-keeping system used by Fleming's service provider, and he explained the records to the jury. Dodson testified that the records only showed the general location of the phone and could not identify who possessed the phone at that time.

{¶ 27} On this record, we conclude that Dodson was sufficiently familiar with the record-keeping system and the use of such records for location mapping to have been deemed a qualified witness for purposes of Evid.R. 803(6). Accordingly, we find no error in the trial court's admission of this evidence.

{¶ 28} The third assignment of error is overruled.

## IV. Remaining Assignments of Error

{¶ 29} The second, fourth, fifth, sixth, and seventh assignments of error are as follows:

FLEMING'S CONVICTIONS WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE AND WERE AGAINST THE WEIGHT OF THE EVIDENCE.

THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING FLEMING'S REQUEST FOR A CONTINUANCE.

FLEMING WAS DENIED THE RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL.

THE TRIAL COURT ERRED IN FAILING TO DISMISS JUROR # 9.

THE TRIAL COURT ERRED IN SENTENCING FLEMING TO CONSECUTIVE PRISON SENTENCES FOR FOUR GUN SPECIFICATIONS.

{¶ 30} In these assignments of error, Fleming contends that his convictions were not supported by the evidence and that the trial court erred by failing to grant a continuance of the trial, by failing to dismiss a juror who indicated her daughter was friends with a family member of the victim, and by sentencing him to consecutive sentences on the gun specifications. Given our disposition of the first assignment of error, we need not address these issues. Accordingly, the second, fourth, fifth, sixth, and seventh assignments of error are overruled.

## V. Conclusion

{¶ 31} The first assignment of error being sustained, Fleming's conviction is reversed, and the matter is remanded to the trial court for further proceedings.

. . . . . . . . . . . . .

HUFFMAN, J., and HANSEMAN, J., concur.